[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11661

_____

Agency Docket No. 11-0227

CERES MARINE TERMINALS, INC.,

Petitioner,

versus

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
MARCEDA MILLER,
GULF TERMINALS INTERNATIONAL AND THE SIGNAL,
MUTUAL INDEMNITY ASSOCIATION, LTD,

Respondents.

_____

On Petition for Review of a Final Order
of the Benefits Review Board

_____

(March 19, 2013)

Before CARNES, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Petitioner Ceres Marine Terminals, Inc., ("Ceres") appeals the decisions of

the Administrative Law Judge ("ALJ") and the Benefits Review Board ("Board").

First, Ceres argues that the ALJ erred in admitting a letter written by Dr. Dale

Whitaker into evidence after the trial was concluded or, alternatively, that its due

process rights were violated because it was not afforded an opportunity to cross-

examine Dr. Whitaker after the ALJ admitted the letter into the record.  Finally,

Ceres argues that the ALJ's findings of fact are not supported by substantial

evidence and that the ALJ erred in failing to apply the § 20(a)[1] presumption to Gulf

Terminals.

The relevant facts are addressed below as we address each contention in turn.

After thorough review of the record, and with the benefit of oral argument, we

affirm.[2]

## I.  Dr. Whitaker's May 20, 2010, Letter

Ceres argues that the ALJ and the Board erred in admitting, post-trial, Dr.

Whitaker's May 20, 2010, letter.  Dr. Whitaker was Ceres' own expert witness.  At

trial, Ceres had introduced earlier reports in which Dr. Whitaker provided medical

---

[1]     33 U.S.C. § 920(a).

[2]     Decisions of the ALJ are reviewable only as to whether they are in accordance with law and supported by substantial evidence in light of the entire record.  This deferential standard of review binds both the Board and this Court.  See Lollar v. Ala. By-Products Corp., 893 F.2d 1258, 1261 (11th Cir. 1990).  "Substantial evidence" has been defined as "more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

opinions relevant to the case.  On March 8, 2010, the ALJ issued a notice scheduling trial for May 25, 2010, and instructing the parties to exchange documents and list the witnesses they intended to call at least fourteen days before the date of the trial.  On May 14, 2010, just eleven days before the date of the hearing, Ceres chose to solicit an additional opinion from Dr. Whitaker.  Ceres asked: "Do you agree with Dr. [Kevin] Murphy that [claimant's] work from September 29, 2007 to January 12, 2009 aggravated and worsened her knee condition [and] thus contributed to her need for knee surgery in January, 2009?"  His May 20, 2010, letter in response answered "no."  He then added: "This cannot be definitively stated.  My impression is that the patella injury is what led to further surgery . . . which would have led to [surgery] for persistent symptoms regardless of [claimant's] occupation."  Although Ceres received this letter on May 21, 2010, four days before trial, it was not introduced into evidence at trial or otherwise mentioned.  The ALJ found that Ceres concealed it.

Because the facts relating to the discovery process are not in the administrative record, we decline (as did the Board) to rely upon the reasoning of the ALJ–i.e., that Ceres had a duty to supplement the record with the May 20 letter. We also decline to rely upon Federal Rule of Civil Procedure Rule 26.  However, it is clear that, pursuant to 33 U.S.C. § 923(a) and 20 C.F.R. § 702.338, the ALJ

3

enjoys broad discretion with respect to the admission of evidence and with respect to reopening the hearing for the receipt of evidence.  See also Guise v. Dep't of Justice, 330 F.3d 1376, 1379 (Fed. Cir. 2003) ("A determination to allow or exclude witness testimony is within the sound discretion of the administrative judge.").  Under the circumstances here, we readily conclude that there was no abuse of discretion in admitting Dr. Whitaker's May 20 letter.

Ceres also argues that the ALJ abused its discretion in admitting Dr. Whitaker's letter because the letter was privileged work product.  We can assume arguendo that the opinions of Dr. Whitaker might in the abstract have been privileged.  However, we agree with the ALJ and the Board that Ceres waived any privilege.  Ceres waived the privilege by introducing at trial previous opinions of Dr. Whitaker and by stating at trial that "no doctors disagreed" with the proposition that subsequent employment aggravated claimant's knee condition.  See Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir.) (stating that the "great weight of authority" holds that the privilege is waived "when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party"), modified on other grounds, 30 F.3d 1347 (11th Cir. 1994).  We conclude there was no abuse of discretion in

4

admitting the May 20, 2010, letter from Dr. Whitaker.

Finally, Ceres argues that the ALJ and the Board violated its due process rights by denying permission to depose Dr. Whitaker. A few additional facts are relevant. After the May 25, 2010, hearing, Gulf Terminals somehow obtained a copy of Dr. Whitaker's May 20 letter and moved the ALJ to reopen the record to admit same. Thereupon, Ceres, for the first time, requested permission to depose Dr. Whitaker. The ALJ ruled on July 6, 2010, admitting into evidence Dr. Whitaker's May 20 letter and denying Ceres' due process-based argument for permission to depose Dr. Whitaker. The ALJ and the Board concluded that Ceres had waived its due process rights. Under the circumstance here, we conclude that Ceres did waive its due process rights. As the ALJ and the Board pointed out, Dr. Whitaker was Ceres' own witness. It had ample opportunity to question him or depose him before the May 25, 2010, hearing. Only a lack of due diligence prevented Ceres from enjoying fuller due process rights. Ceres has provided no excuse for waiting until the eve of trial to seek a supplemental opinion from Dr. Whitaker, especially considering that Dr. Whitaker provided an opinion in this case as early as December of 2009, months before the trial. Also, we see no valid excuse for Ceres' failure to disclose the May 20 letter or address its significance until a copy was somehow obtained by Gulf Terminals and offered into evidence

5

post-trial.  And we see no valid excuse for Ceres' representation during trial that "no doctor disagreed" with the proposition that subsequent employment aggravated claimant's knee condition when the May 20 letter indicated the opposite.

We cannot conclude that the ALJ and Board erred in concluding that Ceres chose to conceal the May 20 letter rather than disclosing it and pursuing due process rights to depose Dr. Whitaker.  We cannot conclude that the ALJ and Board erred in concluding that Ceres had ample opportunity to pursue full due process rights, and that it was only Ceres' own actions that caused a waiver of any additional process.[3]

## II.  Substantial Evidence in the Record

Ceres next argues that the findings of fact are not supported by substantial evidence on the record as a whole.  The issue on this appeal involves the identification of which of two employers should be liable to claimant–Ceres or

---

[3]    On July 6, 2010, the ALJ ruled that Gulf Terminals would be permitted post-trial to introduce the May 20 letter, and that Ceres had waived its right to depose Dr. Whitaker by choosing to conceal the document rather than pursuing due process rights.  Only thereafter did Ceres move the ALJ to reconsider its July 6 order and permit Ceres to introduce its Exhibit 36, which is a July 6, 2010, statement which Ceres had belatedly obtained from Dr. Whitaker which Ceres suggests would clarify his May 20 letter.  Relying on the foregoing waiver of any additional due process rights, as well as the restrictions governing motions for reconsideration, the ALJ denied reconsideration.  We cannot conclude that the ALJ erred in concluding that Exhibit 36 was not "new" evidence, or that Ceres had failed to demonstrate extraordinary circumstances or manifest injustice as might warrant reconsideration.  For these reasons, and the reasons noted in the text, we cannot conclude that error has occurred or that Ceres' due process rights were violated.  Moreover, we note that it is unlikely that Exhibit 36 would have changed the decision of the ALJ or the Board or our decision.

Gulf Terminals. The record is clear that the relevant injury was caused by a fall experienced by claimant on September 28, 2007, while she was working for Ceres. Thereafter, the claimant worked for several other employers, including as relevant to this appeal Gulf Terminals for whom the claimant worked for four hours on January 12, 2009. This was her last employment before she had surgery on January 26, 2009. The parties agree that the identification of which employer is liable (Ceres or Gulf Terminals) is governed by the aggravation doctrine. The aggravation doctrine has been described as follows:

> If the disability resulted from the natural progression of a prior injury and would have occurred notwithstanding the subsequent injury, then the prior injury is compensable and accordingly, the prior employer is responsible. If, on the other hand, the subsequent injury aggravated, accelerated or combined with claimant's prior injury, thus resulting in claimant's disability, then the subsequent injury is the compensable injury, and the subsequent employer is responsible.

Found. Constructors, Inc. v. Dir., OWCP, 950 F.2d 621, 624 (9th Cir. 1991) (quoting Kelaita v. Dir., OWCP, 799 F.2d 1308, 1311 (9th Cir. 1986)). Accordingly, if claimant's work while employed by Gulf Terminals aggravated or worsened claimant's condition or contributed to the need for surgery, then Gulf Terminals would bear the entire liability and compensate claimant. On the other hand, if claimant's surgeries and disabilities resulted from the natural progression of the September 28, 2007, injury, and would have occurred notwithstanding the

7

subsequent work, then liability would rest with Ceres, claimant's employer at the time of the September 28, 2007, injury.  The ALJ found that the relevant disabilities and complications suffered by claimant "were the natural progression of the untreated torn meniscus, not an aggravation of her original [September] 28, 2007 injury."  Miller v. Ceres Marine Terminals, Inc., 2009 LHC 00408, at 20 (Dep't of Labor Nov. 24, 2010).  The Board agreed and affirmed.

Contrary to Ceres' argument, we conclude that this finding is supported by substantial evidence on the record as a whole.  Indeed, we conclude that ample evidence supports the findings of the ALJ.  The claimant's work for Gulf Terminals consisted only of four hours of work on January 12, 2009.[4]  Her work on that day consisted only of driving cars off a ship.  The ALJ expressly credited the testimony of claimant, and on that basis found that "there is no evidence of any accident or traumatic incident while she was employed by Gulf Terminals; nor did she mention any specific pain episode, swelling, or aggravation associated with her last day of work with Gulf Terminals."  Id. at 13.  The medical expert hired by Ceres, Dr. Whitaker, responded on May 20, 2010, to a question posed to him by Ceres'

---

[4]    The ALJ expressly rejected Gulf Terminals' argument that the brevity of the claimant's work for Gulf Terminals (i.e., a mere four hours) had any significant relevance. Miller, 2009 LHC 00408, at 11.  Rather, the ALJ proceeded to a straightforward application of the governing aggravation doctrine.

counsel.  In that letter, he opined that he did not believe claimant's work aggravated or worsened her condition or contributed to the need for surgery.  He explained that, while he could not be definitive, in his opinion, the claimant would have needed the surgery for persistent symptoms regardless of her occupation.  Finally, the claimant's treating physician, Dr. Murphy, opined that the meniscus tear and pain symptoms experienced by claimant were related to the September 28, 2007, accident, and that the injury would not have healed without surgery.  Although Dr. Murphy answered "yes" to a question posed by Ceres' counsel as to whether claimant's continued work from September 29, 2007, through January 12, 2009, would have further aggravated and worsened her condition, the ALJ made the following finding of fact based upon Dr. Murphy's subsequent colloquy with counsel:

> Dr. Murphy thus placed in context that what he meant by "aggravated and worsened" the surgery findings was not that work enlarged, aggravated, or worsened the underlying meniscus tear, but that it worsened or aggravated [claimant's] pain symptoms when the tear rubbed on the articular cartilage.  In this way, he described the mechanism which differentiated the onset of pain symptoms generated by the underlying condition from damage to the condition caused by an aggravating stimulus; and, with objective surgical findings, he supported his opinion that the rubbing did not cause damage.

Id. at 15.  Although Ceres challenges the ALJ's interpretation of Dr. Murphy's testimony, we have carefully examined the testimony and conclude that there is

9

substantial support in the record for the ALJ's interpretation.

We conclude that there is ample support in the record to support the ALJ's findings.  As the Board said: "The [ALJ] found that neither Dr. Murphy nor Dr. Whitaker opined that claimant's four hours of work on January 12, 2009, contributed to the need for surgery or worsened her condition."  Miller v. Ceres Marine Terminals, Inc., BRB Nos. 11-0227, 11-0279, at 12-13 (Ben. Rev. Bd. Dec. 9, 2011).

## III.  Section 20(a) Presumption

Finally, Ceres argues that the ALJ erred in failing to apply the § 20(a) presumption to Gulf Terminals.  The entirety of Ceres' argument in its initial brief consists of three sentences, plus a brief quotation from the Ninth Circuit case of Albina Engine & Machine v. Director, OWCP, 627 F.3d 1293, 1300 (9th Cir. 2000).  Ceres' brief fails to explain how the proper application of that presumption would have changed the decision in this case.  Ceres' argument is not sufficient to rise to the level of preservation of the issue; therefore, we deem the argument abandoned.  See, e.g., N.L.R.B. v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."); United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

10

Moreover, the ALJ and the Board found that the injury at issue here occurred on September 28, 2007, during the claimant's employment with Ceres, and that the claimant's four hours of work for Gulf Terminals on January 12, 2009, did not aggravate or worsen the claimant's condition or contribute to the need for surgery. As noted above, that finding of fact is amply supported by substantial evidence. Accordingly, even if Ceres' argument had not been waived, we do not believe the application of the presumption would have affected the decision in this case.[5]

For all of the foregoing reasons, we affirm.

AFFIRMED.

---

[5]    For these reasons, we need not, and we do not, address the legal issues surrounding the proper application of the § 20(a) presumption. We note, however, that in a traumatic injury case (i.e., the instant case) the Ninth Circuit would employ the precise analysis applied by the ALJ and Board in this case. See Albina, 627 F.3d at 1302.

11