**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBINA ENGINE & MACHINE;
FIREMAN'S FUND INSURANCE CO.,
                    *Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS; BENEFITS
REVIEW BOARD; KAREN
MCALLISTER, Widow of James R.
McAllister; LOCKHEED SHIPBUILDING
and WAUSAU INSURANCE COMPANY;
WILLAMETTE IRON & STEEL CO.;
SAIF CORPORATION,
                    *Respondents.*

No. 09-70592

BRB No. 08-0403

OPINION

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted
October 7, 2010—Portland, Oregon

Filed December 10, 2010

Before: A. Wallace Tashima, Richard A. Paez, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Tashima

19855

## COUNSEL

Dennis R. VavRosky, VavRosky MacColl, Portland, Oregon, for the petitioners.

Russell A. Metz, Metz & Associates, Seattle, Washington, for respondents Lockheed and Wausau Insurance Co.

Norman Cole, Sather, Byerly & Holloway, Portland, Oregon, for respondent Willamette Iron & Steel Co.

Barry H. Joyner, U.S. Department of Labor, Office of the Solicitor, Washington, D.C., for the Director.

---

## OPINION

TASHIMA, Circuit Judge:

Albina Engine & Machine ("Albina") petitions for review of a decision of the Benefits Review Board (the "Board") upholding the Administrative Law Judge's ("ALJ") ruling that Albina is liable for payment of death benefits to Karen McAllister ("Claimant") under the Longshore and Harbor Workers' Compensation Act (the "LHWCA"), 33 U.S.C. § 901 *et seq.* Claimant is the widow of James McAllister ("Decedent"), who died of mesothelioma as a result of exposure to asbestos during his work as a carpenter for three shipyard employers, one of which was Albina. Albina argues that the Board misconstrued existing law on the burden of proof in LHWCA proceedings against multiple employers, misapplied the "last employer" rule, and upheld the ALJ's decision that was not supported by substantial evidence. Albina further contends that liability for payment of benefits should have been assigned instead to Lockheed Shipbuilding ("Lockheed"), another of Decedent's former employers. We have jurisdiction under 33 U.S.C. § 921(c) and grant the petition for review, concluding that Lockheed is liable for the payment of benefits.

## I. BACKGROUND

In 1956, Decedent worked as a shipyard carpenter in the vicinity of Portland, Oregon, first for Willamette Iron & Steel

Co. ("WISCO") and then for Albina. In 1957, Decedent moved to Seattle and worked in a similar capacity at a predecessor company to Lockheed. Decedent ceased maritime employment in 1960. He died in 2002 of mesothelioma. Claimant, his widow, filed a claim for death benefits pursuant to § 9 of the LHWCA, 33 U.S.C. § 909, against Lockheed, Albina, and WISCO.

All parties stipulated that Decedent's injuries occurred while he was employed at a maritime situs, that his death was due to mesothelioma caused by exposure to asbestos, and that the examining pathologist would, if called to testify, state that any level of exposure to asbestos can cause mesothelioma. The principal remaining issue to be decided by the ALJ at trial was the question of which employer — Lockheed, Albina or WISCO — should be liable for the payment of benefits. A trial was held before ALJ Paul Mapes ("ALJ Mapes") in February 2004, and in July 2004, ALJ Mapes issued a decision finding Lockheed liable. The Board reversed and remanded in an opinion issued on August 19, 2005 ("*McAllister I*"). On remand, ALJ Mapes again found Lockheed liable. The Board again reversed and remanded in an opinion issued on April 26, 2007 ("*McAllister II*"). On the second remand, the case was heard by ALJ Steven B. Berlin ("ALJ Berlin"), who found Albina liable for the payment of benefits. The Board affirmed in a decision issued on December 30, 2008 ("*McAllister III*").

The three opinions of the Board contain the following statements of the law with respect to how liability should be assigned in an LHWCA case involving multiple employers:

- The so-called "Section 20(a) presumption" set forth in 33 U.S.C. § 920(a) is invoked only "on behalf of a claimant," and not "against a particular employer." *McAllister I* at 4.

- Once the § 20(a) presumption is invoked, the ALJ must then "weigh relevant evidence" with

respect to *all* potentially responsible employers to determine which is liable for payment of benefits. *McAllister II* at 7.

- The "last employer rule," adopted by this court in *Cordero v. Triple A Mach. Shop*, 580 F.2d 1331 (9th Cir. 1978), which assigns liability for payment of benefits to the injured employee's last covered employer, does not mean that the last employer bears any special burden of proof. Instead, once a claim has been established as compensable, each potentially liable employer bears the *same* burden of proving, by a preponderance of the evidence, either that the claimant was not exposed to injurious stimuli at that employer in sufficient quantities to cause his disease, or that the claimant was exposed to injurious stimuli while working for a subsequent covered employer. The ALJ should consider the evidence with respect to all employers *simultaneously*. *McAllister II* at 9.

- If no employer manages to persuade the ALJ that its evidence is "entitled to greater weight," then the ALJ should assign liability to the claimant's last employer. *McAllister II* at 6.

In keeping with the Board's instructions, on the Board's second remand, ALJ Berlin weighed all of the evidence regarding Decedent's exposure to asbestos at the three employers and determined that "Lockheed's evidence is entitled to greater weight." ALJ Berlin noted that WISCO admitted that Decedent was exposed to asbestos in its employ, and that Decedent had done essentially identical work for Albina as he did for WISCO, but that the evidence of asbestos exposure at Lockheed was weaker. ALJ Berlin determined that Lockheed had "met its burden of showing (more likely than not) the absence of exposure" during Decedent's employment

with Lockheed, and that there was no preponderance of evidence showing an absence of exposure at Albina. Because Decedent worked for Albina after he worked for WISCO, ALJ Berlin found Albina liable for the payment of benefits. The Board affirmed.

Albina timely petitioned for review. At the request of this court, the Director of the Office of Workers' Compensation Programs (the "Director") filed a supplemental brief setting forth the Director's views on the case.

## II. ANALYSIS

### A. Standard of Review

We review decisions of the Board for (1) errors of law, and (2) failure to adhere to the statutory standard governing the Board's review of ALJ decisions, which is one of substantial evidence. *Todd Pac. Shipyards Corp. v. Dir., OWCP* ("*Picinich*"), 914 F.2d 1317, 1319 (9th Cir. 1990). The Board's interpretation of the LHWCA is not entitled to any "special deference." *Port of Portland v. Dir., OWCP* ("*Ronne*"), 932 F.2d 836, 838 (9th Cir. 1991). This court does, however, defer to the statutory interpretations of the Director. *Id.*; *Dir., OWCP v. Palmer Coking Coal Co.* ("*Manowski*"), 867 F.2d 552, 555 (9th Cir. 1989).

### B. Burden of Proof

Albina argues that the Board erred in placing on *each* employer the burden of establishing that it was not the responsible employer, and suggests that the Board also erred in concluding that the § 20(a) presumption applies to the claim, rather than to specific employers.

## 1.  Section 20(a) Presumption

**[1]** The § 20(a) presumption provides: "[I]t shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat [a claim for compensation] comes within the provisions of [the LHWCA]." 33 U.S.C. § 920(a). In order to invoke the presumption, a claimant must allege: (1) that he has been injured; and (2) that the injury arose both "in the course of" and "out of employment." *U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., OWCP*, 455 U.S. 608, 615 (1982); *see also Sprague v. Dir., OWCP*, 688 F.2d 862, 864 (1st Cir. 1982); *Volpe v. Ne. Marine Terminals*, 671 F.2d 697, 700 (2nd Cir. 1982). A claimant must offer "some evidence" of both factors. *See Brown v. I.T.T./Cont'l Baking Co. & Ins. Co. of N. Am.*, 921 F.2d 289, 296 n.6 (D.C. Cir. 1990) ("In order to come within the section 20 presumption, all the claimant need adduce is *some* evidence tending to establish the prerequisites of the presumption."); *see also Ramey v. Stevedoring Servs. of Am.*, 134 F.3d 954, 960 (9th Cir. 1998) (holding that uncontradicted testimony by the claimant regarding working conditions is sufficient evidence to invoke the § 20(a) presumption).[1] The employer may then overcome the presumption by presenting "substantial evidence" to rebut the claim that the injury is work-related (i.e., that it arose in the course of and out of the claimant's employment). *Ramey*, 134 F.3d at 959; *see also Volpe*, 671 F.2d at 700. If the employer succeeds in rebutting the presumption, the ALJ must then evaluate whether the evidence as a whole justifies the awarding of ben-

---

[1]The First Circuit has interpreted this court's holding in *Picinich* as requiring a higher standard than "some evidence." *Bath Iron Works v. Brown*, 194 F.3d 1, 5 n.4 (1st Cir. 1999). That interpretation is a misreading of *Picinich*, however. In *Picinich*, this court did not consider whether the claimant had introduced sufficient evidence to invoke the § 20(a) presumption. Instead, the primary question concerned the level of injurious stimuli to which a claimant needed to have been exposed at a particular employer for that employer to be found liable. *Picinich*, 914 F.2d at 1319-20.

The Board stated in *McAllister I* that "substantial evidence" is required for a prima facie case, but that statement is entirely unsupported by the case law, including that cited by the Board in support.

efits. *Id.* The claimant bears the ultimate burden of persuasion by a preponderance of the evidence. *Bath Iron Works*, 194 F.3d at 6.

**[2]** Contrary to the Board's repeated statements in its decisions in this case, the § 20(a) presumption *is* relevant to the question of liability in a multi-employer case, and not just to the question of whether a claim is compensable in the first instance. It is illogical to state, as the Board does, that § 20(a) applies only to the compensability of a claim, and not to the question of the liable employer, because of the nature of the prima facie case that a claimant is required to make under § 20(a). The presumption is invoked only if a claimant alleges that his injury arose out of and in the course of his employment. It is implicit in this language that the employment referred to is employment *with a particular employer*, against whom a claim has been filed. Where only a single employer is claimed against, the claimant would of course not be able successfully to assert a claim that fell within the § 20(a) presumption on the basis of evidence relating to employment with some other employer that was not claimed against. Similarly, in a claim against multiple employers, the claimant should be expected to make out a prima facie case against *all* of the employers; if the claimant fails to make such a case against one employer, the presumption should not apply against that employer.

**[3]** Additionally, removing the § 20(a) presumption from the determination of the liable employer, as the Board held, threatens to violate § 7(c) of the Administrative Procedure Act ("APA"). APA § 7(c) states that, "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). The Supreme Court has held that APA § 7(c) applies to adjudications under the LHWCA. *Dir., OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994). Under the rule in *Greenwich Collieries*, the § 20(a) presumption is a legitimate statutory exception to APA § 7(c), but the "true doubt" rule previously applied by the Director,

which shifted the burden of persuasion to the party opposing a benefits claim even when the § 20(a) presumption did *not* apply, violated APA § 7(c). *Id.* at 269, 280. The Board in this case held that each employer bears a burden of proof in the determination of liability in a multi-employer suit. *McAllister III* at 4. But it is unclear where that burden of proof can come from if not the § 20(a) presumption. If the burden is imposed other than pursuant to statute, it is invalid under APA § 7(c) and *Greenwich Collieries*.[2]

This and other courts have relied on § 20(a) to reach the conclusion as to which of several employers is liable for LHWCA benefits. *See Ramey*, 134 F.3d at 959-60 (applying a § 20(a) analysis to the question of whether the claimant had proved that he was exposed to injurious stimuli while working at a particular employer, where the parties agreed that the claimant's claim was compensable); *Norfolk Shipbuilding & Drydock Corp. v. Faulk*, 228 F.3d 378, 385 (4th Cir. 2000) (determining which of two potentially responsible employers is liable for payment of benefits through an analysis derived from § 20(a)).

The Board cites *Marinette Marine Corp. v. Dir., OWCP*, 431 F.3d 1032, 1035 (7th Cir. 2005), as support for its assertion that § 20(a) applies only to the claim, and not to individual employers. The Board itself has also previously so held.

---

[2]The Director agrees with the Board's interpretation of the law on this point. The Director acknowledges that APA § 7(c) applies but asserts that this interpretation does not run afoul of it, because "each employer is, in its turn, the proponent of a rule or order that it is not the responsible employer." For this proposition, the Director cites by analogy to *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849 (D.C. Cir. 2002). But *Nat'l Mining Ass'n*, which concerns burden-shifting under the Black Lung Benefits Act, holds specifically that an employer may be considered to be the proponent of a rule or order that it is not the responsible employer only if the "claimant has already carried his burden of proving that an operator is liable." *Id.* at 872. In other words, there must be a legitimate statutory shifting of the burden of proof, such as that which occurs under § 20(a), to support the placement of a burden of proof on a given employer.

*See Buchanan v. Int'l Transp. Serv.*, 1999 WL 197777, at *4 (DOL Ben. Rev. Bd., March 26, 1999); *Lins v. Ingalls Ship-building, Inc.*, 1992 WL 213839 (DOL Ben. Rev. Bd., Aug. 18, 1992), at *2; *Susoeff v. S.F. Stevedoring Co.*, 1986 WL 66392, at *2 n.2 (DOL Ben. Rev. Bd., Nov. 28, 1986). How-ever, the Board's interpretation of the proper application of § 20(a) did not determine the outcome in those prior holdings. In *Buchanan*, there was no question as to whether the claim-ant had sustained an injury in the employ of all employer par-ties. *Buchanan*, 1999 WL 197777, at *4. *Lins* concerned an attempt by one employer to invoke the § 20(a) presumption against a subsequent employer where the *claimant* had not filed a claim against that subsequent employer; the Board rightly rejected that attempt. *Lins*, 1992 WL 213839, at *2. In *Susoeff*, only one employer was claimed against, and the key issue was whether it was the claimant's burden to show that the employer against whom a claim was filed was the last responsible employer. *Susoeff*, 1986 WL 66392, at *2. As for *Marinette Marine Corp.*, we respectfully disagree with the its holding on the application of the § 20(a) presumption. The Seventh Circuit cites only *Buchanan* in support of its holding and does not cite or discuss *Greenwich Collieries* on this issue.

## 2. Rational Connection Rule

Albina also argues that the imposition of a burden of proof on all employers violates the so-called "rational connection" rule of this court, which states that liability may not be assigned to an "employer who *could not*, even theoretically, have contributed to the causation of the disability." *Ronne*, 932 F.2d at 841; *see also Cordero*, 580 F.2d at 1336. That objection would be valid only if a burden of proof is imposed on all employers based on evidence relevant only to one. ALJ Mapes did apply the § 20(a) presumption in that way in his second opinion (reluctantly), as he believed that this was what the Board called for in *McAllister I*, but that application was in error and, in any event, was reversed in *McAllister II.* The

application of the presumption described above, in which the presumption is imposed only on employers with respect to whom the claimant offers some evidence, does not threaten any violation of the "rational connection" rule.

## C.  Last Employer Rule

Albina also argues that the Board erred by holding that the burden of each employer to persuade the ALJ that it is not liable "is not sequential . . . [but] is simultaneous," and that the Board should "weigh all of the evidence" regarding all of the employers in one analysis. *McAllister II* at 9. Albina asserts that the evidence regarding each employer should have been analyzed *sequentially* instead, with the most recent employer analyzed first, and with liability assigned to the first-analyzed employer to be found responsible for exposing Decedent to asbestos.

**[4]** Albina's position is that a sequential analysis is the correct application of the "last employer" rule. The last employer rule dictates that "the employer during the last employment in which the claimant was exposed to injurious stimuli . . . should be liable for the full amount of the award." *Travelers Ins. Co. v. Cardillo*, 225 F.2d 137, 145 (2d Cir. 1955). That rule was first applied by this court in *Cordero*, 580 F.2d at 1336, and has been reiterated in a number of our other decisions. *See Ronne*, 932 F.2d at 840; *Picinich*, 914 F.2d at 1319; *Lustig v. U.S. Dep't of Labor*, 881 F.2d 593, 596 (9th Cir. 1989); *Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1284 (9th Cir. 1983). The last employer rule is justified by the policy consideration of "administrative convenience" and by the theoretical likelihood that "all employers will be the last employer a proportionate share of the time." *Cordero*, 580 F.2d at 1336.

**[5]** The Director agrees with Albina that the correct way to apply the last employer rule is to analyze the evidence regarding each employer separately and sequentially. The Director

argues that "[i]mposing simultaneous burdens results in uncertainty and confusion, and may lead to anomalous or inconsistent results," and that, if the Board's simultaneous-analysis approach is adopted, "it is unclear who bears the risk of non-persuasion between any two potentially liable employers." This court accords considerable deference to the Director's interpretations of the LHWCA. *Gen. Ship Serv. v. Dir., OWCP*, 938 F.2d 960, 962 (9th Cir. 1991); *Manowski*, 867 F.2d at 555. When the interpretations of the Director and the Board conflict, we favor those of the Director. *Ronne*, 932 F.2d at 838-39; *McDonald v. Dir., OWCP*, 897 F.2d 1510, 1512 (9th Cir. 1990).

[6] The policy arguments for the sequential analysis are also compelling. The point of the last employer rule is to simplify the ALJ's analytical task (and the task of the Board and the courts in reviewing the ALJ's analysis) so that a claimant may receive benefits quickly. The sequential approach accomplishes this goal, because it establishes clearly which of the potentially liable employers bears the burden of proof and because, if the last employer claimed against is determined to be a responsible employer, the ALJ need not analyze the evidence regarding earlier employers. In contrast, a simultaneous analysis runs the risk of engaging the ALJ in irrelevant questions, such as (to use examples drawn from this case) whether "the evidence of exposure at Albina is far greater than at Lockheed" or whether "the evidence of asbestos exposure at Albina is not as strong as at WISCO." As the Director points out, the sequential approach also makes it easier for a potential employer to anticipate its potential liability, based on its position in the sequence. *See Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 954 (9th Cir. 2007) ("The compensation scheme set forth in the LHWCA recognizes . . . 'the employers' interest in having their contingent liabilities identified as precisely and as early as possible.' ") (quoting *Potomac Elec. Power Co. v. Dir., OWCP*, 449 U.S. 268, 282 (1980)). We conclude that the Board erred in adopting a simultaneous analysis approach.

Lockheed contends that the sequential approach would convert the last employer rule "from administrative to evidentiary; from a rule grounded in convenience and speed of recovery to one of narrowly focused burdens." We are not persuaded. A sequential analysis does not affect the burdens of proof already in place. As Lockheed admits, once the § 20(a) presumption is established, "*all* potentially responsible employers have a burden to disprove liability." A sequential analysis merely relieves the ALJ of the trouble of formulating a reasoned opinion regarding whether earlier employers have disproved liability if a later employer has failed to do so.

The Board relies on *Picinich* as support for its position that the analysis should be simultaneous, not sequential. In *Picinich*, this court overturned a decision of the Board assigning liability to a last-in-time employer at which the claimant had been exposed only to "minimal" quantities of asbestos, and assigned liability instead to the earlier employer. *Picinich*, 914 F.2d at 1318. The crux of that case, however, was not the mode of analysis, but instead whether or not an employer may be found liable if it was not found *responsible*, i.e., if the employee was not even exposed by that employer to injurious stimuli in sufficient quantities to cause harm. *Id.* at 1320. The sequential-analysis approach in no way removes basic causation from the inquiry as to whether the last employer is potentially responsible.

The Board also relies on its earlier decision in *Buchanan*, 1999 WL 19777, that we affirmed in *Int'l Transp. Servs. v. Kaiser Permanente Hosp., Inc.*, 7 F. App'x 547 (9th Cir. 2001) (*mem.*). The Board asserts that *Buchanan* supports a simultaneous analysis. But *Buchanan* dealt with the allocation of liability in a two-employer case involving a *traumatic injury*, not an occupational disease, as here. What this court in *Int'l Transp. Servs.* calls "the 'last employer' rule or 'aggravation' rule", *id.* at 549, is actually a different test from the last employer rule applied in occupational disease cases.

*See Found. Constructors, Inc. v. Dir., OWCP*, 950 F.2d 621, 624 (9th Cir. 1991). The rule applied in injury or cumulative trauma cases involves an analysis of whether the claimant's disability is the result of a natural progression of an injury that occurred at an earlier employer, or was aggravated or accelerated by conditions at a later employer. *Id.*; *Kelaita v. Dir., OWCP*, 799 F.2d 1308, 1311 (9th Cir. 1986). It would be irrational to attempt such an analysis without consideration of the evidence regarding working conditions at *both* employers, and thus a simultaneous analysis is called for in injury cases. That rationale does not extend to occupational disease cases, however.

**[7]** Therefore, the ALJ in multiple-employer occupational disease cases should conduct a sequential analysis, as follows: the ALJ should consider *sequentially*, starting with the last employer, (1) whether the § 20(a) presumption has been invoked successfully against that employer, (2) whether that employer has presented substantial, specific and comprehensive evidence so as to rebut the § 20(a) presumption, *see Ramey*, 134 F.3d at 959,[3] and (3) if the answer to the second question is yes, whether a preponderance of the evidence supports a finding that that employer is responsible for the claimant's injury, *see Volpe*, 671 F.2d at 700. The first employer in the analytical sequence (that is, the last employer in time) who is found to be responsible under this analysis shall be liable for payment of benefits, and the ALJ need not continue

---

[3]The presumption may be rebutted not only with substantial evidence that the claimant was not harmed by injurious stimuli at that employer, but also with substantial evidence that the claimant was exposed to injurious stimuli at a subsequent covered employer. *See Bath Iron Works*, 194 F.3d at 5-6. As a practical matter, though, in the sequential analysis described here, the latter method of rebuttal is likely to be available only to an employer who seeks to show that a covered employer who is not claimed against in that proceeding is actually responsible for the claimant's injury, because, if substantial evidence exists of exposure by a later employer who is part of the same proceeding, then the analysis probably would have stopped at that later employer.

with this analysis for the remaining employers. In conducting this analysis, the ALJ should consider *all* evidence regarding exposure or lack thereof at a particular employer, and evidence supporting a finding of exposure at a given employer may be submitted either by the claimant or by earlier employers.

It should be noted that the analysis prescribed here is intended only as a sequential mode of *analyzing* relevant evidence. It is not intended to dictate the order of proof or any other aspect of the ALJ's management of the case. The governing regulations give the ALJ ample discretion to structure the hearing and order the proof in a manner the ALJ deems most efficient in light of all of the parties, the issues, and the evidence. *See* 20 C.F.R. §§ 702.338, 702.339, 702.343, 702.345, 702.347. Thus the sequential methodology of analyzing the evidence should not impinge upon the ALJ's conduct and control of the case.

The Director advocates a somewhat different approach to the sequential analysis, calling for a rule that "each employer must disprove its liability by a *preponderance of the evidence.*" While we owe deference to the views of the Director, we do not adopt the Director's approach on this issue, because, as is discussed above, the Director's brief does not sufficiently account for APA § 7(c). The "preponderance of the evidence" standard the Director advocates imposes on each employer a burden of proof other than that created by § 20(a), which is not permitted under *Greenwich Collieries*.

## D.  Liable Employer

[8] In ALJ Mapes' first decision, he applied an analysis similar to the one we set out above. ALJ Mapes found that Claimant had met the § 20(a) "some evidence" standard against Lockheed, the last employer in the proceeding, and that Lockheed had failed to rebut the § 20(a) presumption, because Lockheed had not provided *any* contrary evidence.

ALJ Mapes then concluded that Lockheed was the responsible employer.

[9] Our own analysis yields the same conclusion. Claimant did submit *some* admissible evidence of asbestos exposure at Lockheed: (1) a deposition statement from George Norgaard, a former employee of Owens-Corning Fiberglass, that Owens-Corning stored asbestos-containing materials at Lockheed's shipyard during the period when Decedent worked there and that at times workers for Owens-Corning installed pipe insulation containing asbestos on ships being constructed in Lockheed's yard; (2) testimony from Decedent's first wife that he used to come home from work at Lockheed's shipyard with dusty clothes; (3) testimony from a Dr. Zbinden describing statements that Decedent made to Claimant and Dr. Zbinden regarding his asbestos exposure; and (4) testimony from Claimant regarding statements made by Decedent. Norgaard's deposition does not conclusively establish that Decedent worked around asbestos at Lockheed, but it does constitute reasonable circumstantial evidence of exposure: Norgaard describes the installation of asbestos-containing materials by Owens-Corning employees on ships being constructed in shipyards, including Lockheed's, beginning in 1957, and also notes that members of "almost all" other crafts (presumably including carpentry, Decedent's craft) were in the vicinity when these materials were being installed.[4]

ALJ Berlin also found that Dr. Zbinden's and Claimant's testimony only establishes that the Decedent thought he was exposed to asbestos in his shipyard employment in general, and not that Decedent specifically thought he was exposed at Lockheed. But in cross-examination at the hearing before ALJ Mapes in 2004, Claimant in fact stated that Decedent *did*

---

[4]ALJ Berlin correctly points out that Norgaard admitted that Owens-Corning did little or no installation work on destroyers at Lockheed's yard for a period of time, but that period was 1965 to 1970, not the period of Decedent's employment.

name Lockheed (not by name, but as "some employer" in Seattle for whom he worked for two years) as one of three places where he was exposed to asbestos. The Board mistakenly dismissed these statements as "not proof of exposure." In fact, they do constitute evidence sufficient to invoke the § 20(a) presumption under the standard previously applied by this court. *See Ramey*, 134 F.3d at 960.

**[10]** Lockheed, on the other hand, did not submit *any* evidence, let alone substantial evidence, to rebut the evidence against it. As the last (most recent) employer to fail to rebut the § 20(a) presumption, it is liable for payment of benefits.

## III.   CONCLUSION

The Board erred in holding: (1) that the § 20(a) presumption is irrelevant to the question of liability in a multi-employer case; (2) that each employer must show by a *preponderance* of the evidence that it is not the last responsible employer; and (3) that the evidence regarding each employer should be analyzed simultaneously. We hold that in LHWCA occupational disease cases involving multiple employers: (1) the § 20(a) presumption must be invoked against each employer before that employer may be found liable for payment of benefits; (2) each employer may rebut the § 20(a) presumption with *substantial* evidence that it is not the last responsible employer; (3) once an employer has rebutted the § 20(a) presumption, it may be found liable only if a preponderance of the evidence supports a finding that that employer is responsible; and (4) the analysis with respect to each employer shall be applied sequentially, beginning with the last (most recent) employer, and need not be conducted for earlier employers once a responsible employer is found. Both the first decision of ALJ Mapes and our review of the evidence confirm that, under the analysis we adopt here, Lockheed is the last responsible employer and is liable for the payment of benefits.

The petition for review is **GRANTED** and the judgment of the Board is **REVERSED.**