In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2234

JEFFBOAT, INC. and
AMERICAN LONGSHORE MUTUAL ASSOCIATION, LTD.,

*Petitioners*,

*v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
United States Department of Labor, and CALVIN F. CHAFFERS,

*Respondents*.

Petition for Review of an Order of the
Benefits Review Board.
Nos. 23-0108, 23-0301

ARGUED FEBRUARY 12, 2025 — DECIDED JUNE 23, 2026

Before PRYOR, KOLAR, and MALDONADO, *Circuit Judges*.

MALDONADO, *Circuit Judge*. Calvin Chaffers worked as a ship painter for Jeffboat, Inc. for twelve years. After he was laid off in 2017, Chaffers filed a claim for workers' compensation under the Longshore and Harbor Workers' Compensation Act. Chaffers claimed that he experienced breathing difficulties after he was exposed to numerous lung irritants as

part of his work. Jeffboat and its insurance company, American Longshore Mutual Association, Ltd. ("Jeffboat" collectively), disputed the claim, and a formal hearing was held before a Department of Labor administrative law judge ("ALJ"). Considering Chaffers' testimony, medical records, and dueling expert reports, the ALJ found Chaffers was entitled to partial disability benefits. The Office of the District Director later awarded attorneys' fees and costs to Chaffers. The Benefits Review Board affirmed both decisions.

Jeffboat now petitions for review of the benefits determination and fee award. Under the deferential substantial evidence standard, we affirm.

## I

From 2005 to 2017, Chaffers was employed as a painter, paint quality inspector, and paint supervisor in Jeffboat's shipyard in Jeffersonville, Indiana. Chaffers worked long hours painting and inspecting the underwater hulls of ships, either in ventilated buildings or unventilated canvas paint tents.

Chaffers testified that his duties—such as preparing and applying paint, cleaning paint equipment, and sandblasting—exposed him to various chemicals. Specifically, he was exposed to fumes and particles from toxic paints, paint thinner, anti-freeze, welding, gouging, sandblasting, and charcoal slag abrasive products. Chaffers wore different forms of personal protective equipment depending on the task, though he said Jeffboat did not always require such equipment.

In December 2017, Chaffers filed a claim with the Department of Labor Office of Workers' Compensation Programs ("OWCP") under the Longshore and Harbor Workers'

Compensation Act. The Act provides compensation for certain injuries "arising out of and in the course of employment." 33 U.S.C. §§ 902(2), 903(a), 904(a). After a claims examiner recommended denying benefits at an informal conference, Chaffers requested a formal hearing before an ALJ, which was held on August 26, 2021.

At the hearing, Chaffers was the sole live witness, and he testified extensively about his medical history and exposure to toxic lung irritants. Chaffers testified that he has several health conditions, including hepatitis, sinusitis, hypertension, obesity, asthma, sleep apnea, depression, anxiety, chronic neck and back pain, lupus, and human immunodeficiency virus ("HIV") infection. Chaffers admitted that he was a longtime smoker of approximately a half-pack a day, though he switched to vaping sometime in 2015. Since he was laid off in 2017, Chaffers has not worked; he started receiving Social Security disability benefits in 2019 based on various medical conditions.

Chaffers first noticed shortness of breath in 2015 when he started needing to take breaks to catch his breath after walking across the shipyard. He sought treatment for shortness of breath from various providers between 2017 and 2020, including Dr. Azmi Draw, a lung and sleep specialist, from 2018 to 2020. Based on two pulmonary function tests and a CT scan of Chaffers' lungs, Dr. Draw diagnosed Chaffers with chronic obstructive pulmonary disease ("COPD"), shortness of breath, cough, hypersomnia, nicotine dependence, localized enlarged lymph nodes, and emphysema. Dr. Draw's records did not include any opinion on the cause of the conditions, though Dr. Draw noted Chaffers' smoking in his medical history. Chaffers also saw Dr. James Woodiel, who diagnosed

Chaffers with pulmonary fibrosis and systemic lupus erythematosus. In Chaffers' records, Dr. Woodiel also listed a diagnosis of "exposure to paint fumes."

Chaffers' retained expert, Dr. Ankit Gupta, a licensed physician board certified in pulmonary disease, critical care medicine, and internal medicine, provided an expert report opining on Chaffers' pulmonary impairment and its cause. Dr. Gupta based his report on an interview with Chaffers and his medical records. Dr. Gupta opined that Chaffers' pulmonary function tests and CT scan showed a moderate restrictive lung function without airway obstruction, emphysema, and COPD. Dr. Gupta also opined that Chaffers had a 14% mild impairment under the American Medical Association ("AMA") *Guides to the Evaluation of Permanent Impairment*, 6th Edition, due to a reduced diffusing capacity for carbon monoxide and history of shortness of breath.

As for the cause of Chaffers' conditions, Dr. Gupta concluded that, "[t]o a reasonable degree of medical probability," Chaffers' "workplace exposures caused his emphysema and contributed to his resulting disability." According to Dr. Gupta, "[c]ontinuous paint exposure, especially oil-based paints, over a long period of time can cause emphysema," and exposure to sandblasting can cause lung scarring and disease. Dr. Gupta acknowledged Chaffers' smoking history and medical conditions but noted that Chaffers reported a history of "significant exposure to his lungs" in his employment. In Dr. Gupta's view, Chaffers' restrictive lung disease "[wa]s typical for patients with occupational exposures to sandblasting, . . . charcoal slag, and paint fumes."

Jeffboat's expert, Dr. William Frazier, a physician who is board certified in internal medicine, sleep disorders medicine,

critical care, and pulmonary medicine, opined that Chaffers did not have COPD, restrictive pulmonary disease, or pulmonary fibrosis. Dr. Frazier acknowledged that Chaffers had symptoms of shortness of breath and cough yet stated that the symptoms "are not [a] disease. Rather, they are common symptoms with many potential causes." Dr. Frazier noted that "[h]eart disease causing shortness of breath and cough is common in men such as Mr. Chaffers who are middle-aged former smokers with hypertension and HIV infection." Dr. Frazier did not diagnose Chaffers with a cardiac condition, nor did any other doctor. Dr. Frazier also speculated that Chaffers' symptoms could be attributed to pulmonary hypertension, which, while rare, is "much more common in people with HIV infection."

Dr. Frazier acknowledged that long-term unprotected exposure to certain types of paint and antifreeze, as well as sandblasting materials, can cause lung disease. But he did not explain why these exposures did not cause or contribute to Chaffers' breathing issues. Instead, because he believed that Chaffers had no confirmed pulmonary disease, Dr. Frazier stated that he could not offer an opinion on disease causation.

The ALJ issued a decision on December 20, 2022, finding Chaffers partially disabled and entitled to benefits. Evaluating the evidence, the ALJ followed the Act's burden-shifting framework. Under § 20(a) of the Act, 33 U.S.C. § 920(a), a claimant is entitled to a presumption that their injury was causally related to their employment if they establish that (1) they suffered a harm; and (2) "conditions at the workplace existed that could have caused the harm." *Am. Grain Trimmers, Inc. v. OWCP*, 181 F.3d 810, 813 (7th Cir. 1999) (en banc). An employer may rebut this presumption through "substantial

evidence to the contrary." *Marinette Marine Corp. v. OWCP*, 431 F.3d 1032, 1034 (7th Cir. 2005) (quoting *Am. Grain Trimmers*, 181 F.3d at 813–14). If the presumption is rebutted, the burden of persuasion shifts back to the claimant to show by a preponderance of the evidence ("on the record as a whole") that the workplace incident caused or aggravated his injury. *Id.* (citing *Am. Grain Trimmers*, 181 F.3d at 819).

The ALJ found that Chaffers made a preliminary prima facie case by showing that he suffered a harm, and that his workplace conditions could have caused the harm. Chaffers presented credible evidence of his lung injury—both Dr. Gupta and Dr. Frazier acknowledged Chaffers' coughing and shortness of breath. And Dr. Gupta opined that Chaffers' lung conditions could be causally related to his workplace exposures to sandblasting and paint fumes. Thus, the ALJ concluded, Chaffers was entitled to the § 20(a) presumption.

Turning to Jeffboat's evidence, the ALJ determined that Jeffboat successfully rebutted this presumption with Dr. Frazier's testimony. Dr. Frazier opined that Chaffers' breathing difficulties were unrelated to his work for Jeffboat and likely caused by an undiagnosed cardiac condition.

With the presumption dropped from the case, the ALJ considered the record as a whole and found that Chaffers' injury was causally related to his work at Jeffboat. The ALJ found Dr. Gupta's opinion more persuasive because he supported it with more fulsome explanation and medical literature, while Dr. Frazier only selectively reviewed Chaffers' pulmonary function tests. Further, although Dr. Frazier acknowledged that long-term unprotected exposure to paints, antifreeze, and sandblasting materials can cause lung disease, he did not

explain why such exposures could not have caused or contributed to Chaffers' lung impairment.

The ALJ ultimately concluded that Chaffers was permanently partially disabled. The ALJ awarded Chaffers permanent partial disability benefits, based on Dr. Gupta's impairment rating of 14%, which was "the best, and perhaps only, level of disability supported by the record." The ALJ also awarded medical benefits, for expenses that are reasonably necessary to treat Chaffers' pulmonary conditions. After his success before the ALJ, Chaffers' counsel filed a fee petition with the OWCP's Office of the District Director, seeking $7,358.25 in fees and costs. Jeffboat objected to the hourly rate and some billing entries in Chaffers' petition, and the District Director awarded Chaffers' counsel $4,695.50.

The Benefits Review Board affirmed the ALJ's decision, explaining that the findings of fact and conclusions of law were rational, supported by substantial evidence, and in accordance with applicable law. The Board also affirmed the award of attorneys' fees because Jeffboat did not show the District Director erred.

## II

Although Jeffboat petitions for review of the order of the Benefits Review Board, we sit in direct review of the ALJ and District Director decisions. *See Consolidation Coal Co. v. Dir., OWCP*, 911 F.3d 824, 838 (7th Cir. 2018); *Old Ben Coal Co. v. Dir., OWCP*, 292 F.3d 533, 538 (7th Cir. 2002). We take each decision in turn.

## A

We start with Jeffboat's challenge to the ALJ's benefits determination. Our review is deferential: "We affirm an ALJ's

findings so long as they are rational, supported by substantial evidence and consistent with governing law." *Consolidation Coal Co. v. Dir., OWCP*, 129 F.4th 409, 416 (7th Cir. 2025) (quotation omitted). "The substantial evidence standard is somewhat of a misnomer, however, because 'the threshold for such evidentiary sufficiency is not high.'" *Id.* at 416–17 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). In this context, "[s]ubstantial evidence means 'more than a mere scintilla,'" that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 417 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "We do not reweigh the evidence, resolve inconsistencies in the record, make credibility determinations, or substitute our inferences for those drawn below." *Roberts & Schaefer Co. v. Dir., OWCP*, 400 F.3d 992, 996 (7th Cir. 2005) (quotation omitted). Instead, we ensure that the ALJ looked at all the relevant evidence and did not substitute their judgment for that of an expert or disregard expert opinions absent evidence to the contrary. *Bunge Corp. v. Carlisle*, 227 F.3d 934, 938 (7th Cir. 2000).

Jeffboat's challenges on appeal boil down to two arguments: (1) Chaffers was not entitled to the § 20(a) presumption because the evidence did not show that he suffered any harm arising from his work conditions; and (2) the evidence did not support the ALJ's determination that Chaffers was entitled to benefits. Neither is persuasive.

First, Jeffboat argues that Chaffers failed to make the prima facie showing required to avail himself of § 20(a)'s presumption that his claim was covered by the Act. As noted earlier, § 20(a) creates a presumption that the claimant's injury was causally related to their employment if the claimant establishes that they suffered a harm that could have been

caused by conditions at the workplace. *See Am. Grain Trimmers*, 181 F.3d at 813; 33 U.S.C. § 920(a). Jeffboat insists that Chaffers failed to make a prima facie showing that he suffered harm at all or that any harm he did suffer could have been causally connected to his workplace.

But Chaffers presented evidence that two physicians—a treating physician (Dr. Draw) and an expert witness (Dr. Gupta)—diagnosed him with COPD and emphysema. And Dr. Gupta opined that, "[t]o a reasonable degree of medical probability . . . Chaffers' workplace exposures caused his emphysema and contributed to his resulting disability." Even Dr. Frazier, Jeffboat's medical expert, testified that the chemicals to which Chaffers was exposed could cause lung disease.

That evidence was sufficient for purposes of the § 20(a) presumption. "[I]f a claimant produces some evidence to support her prima facie case, she is entitled to the presumption that her injury is work-related and compensable." *Rose v. Vectrus Sys. Corp.*, BRB No. 20-0279, 2023 WL 111367, at *10 (Ben. Rev. Bd. 2023) (en banc); *see also Brown v. I.T.T./Continental Baking Co.*, 921 F.2d 289, 296 n.6 (D.C. Cir. 1990); *Albina Engine & Mach. v. Dir., OWCP*, 627 F.3d 1293, 1298 (9th Cir. 2010). Chaffers did not need to present more—"'some evidence' is a light burden." *See Rose*, 2023 WL 111367, at *10. And Chaffers only needed to satisfy the burden of production, not persuasion; the consideration of contradictory evidence and "[c]redibility does not come into play in addressing whether a claimant has established a prima facie case." *See id.*

Second, Jeffboat argues that after it successfully rebutted the § 20(a) presumption, Chaffers failed to show by a preponderance of the evidence that the workplace caused or aggravated his injury. Jeffboat says that the ALJ improperly

weighed the evidence in finding that Chaffers was injured, that his injury was related to his work at Jeffboat, and that his injury rendered him disabled. These challenges fail.

As an initial matter, to the extent Jeffboat is arguing that the ALJ erred when he credited Dr. Gupta over Dr. Frazier, this is precisely the kind of "reweigh[ing of] the evidence" in which we cannot engage. *See Consolidation Coal*, 129 F.4th at 417 (quotation omitted); *see also Summers v. Freeman United Coal Mining Co.*, 14 F.3d 1220, 1223 (7th Cir. 1994) (collecting cases) ("It is the sole province of the ALJ to weigh the evidence and resolve conflicts therein."). The ALJ considered both opinions, weighed them against the entirety of the record, and concluded that Dr. Gupta had the more persuasive position. Our role is only to assess whether that conclusion "has substantial evidentiary support," *Consolidation Coal*, 129 F.4th at 417—not to "substitute our own inferences, or those of [Jeffboat], for those made by the ALJ," *see Summers*, 14 F.3d at 1225. In any event, we find the ALJ's decision was grounded in substantial evidence.

Jeffboat first asserts that Chaffers failed to prove he suffered any injury at all. According to Jeffboat, the medical record evidence did not support the ALJ's adoption of Dr. Gupta's findings and conclusion that Chaffers suffered from pulmonary conditions, including COPD and emphysema. Instead, Jeffboat says, the evidence only supported Dr. Frazier's contrary opinion that Chaffers did not have any lung condition and that his breathing issues were more likely symptoms of other underlying health conditions, including a potentially undiagnosed cardiac condition.

But substantial evidence supported the ALJ's determination that Chaffers has some sort of pulmonary impairment.

Dr. Gupta opined that Chaffers has COPD and emphysema. That opinion was consistent with treating physician Dr. Draw's diagnoses based on Chaffers' CT scan. Further, Dr. Gupta's opinion was thoroughly explained and supported with citations to a medical journal. In contrast, as the ALJ explained, Dr. Frazier selectively reviewed Chaffers' pulmonary function tests, citing only to normal results while ignoring abnormal results that suggested decreased functionality. Moreover, both Dr. Gupta and Dr. Frazier acknowledged Chaffers' coughing and shortness of breath. Coughing and shortness of breath from restricted lung flow is certainly a physical harm, regardless of whether it is a diagnosed pulmonary condition. Jeffboat therefore "can't realistically say that [Chaffers] didn't suffer an injury." *See Marinette Marine*, 431 F.3d at 1034.

Jeffboat is also mistaken in its suggestion that Chaffers had to prove he had a *specific* condition. The Act requires Chaffers to show "disability . . . result[ing] from an injury." *See* 33 U.S.C. § 903(a). Courts and the Benefits Review Board have long viewed the concept of "injury" under the Act as broadly referring to *any* physical harm. *See Psalidas v. Core Lab'ys*, BRB No. 02-0687, 2003 WL 26100032, at *2 (Ben. Rev. Bd. June 30, 2003) ("Claimant need not show that he has a specific illness or disease in order to establish that he has suffered an injury under the Act, but need only establish some physical harm, *i.e.*, that something has gone wrong with the human frame." (citing *Wheatley v. Adler*, 407 F.2d 307 (D.C. Cir. 1968); *Crawford v. Dir., OWCP*, 932 F.2d 152 (2d Cir. 1991); *Romeike v. Kaiser Shipyards*, 22 BRBS 57 (Ben. Rev. Bd. 1989))). In other words, it is enough that Chaffers suffered some sort of problems with his lungs, regardless of the label.

Jeffboat next argues at length that the medical records do not support Dr. Gupta's opinion that Chaffers' workplace conditions at Jeffboat caused or contributed to his pulmonary impairments. The opinion should not have been credited, Jeffboat says, because it was mere speculation. Dr. Frazier's opinion, on the other hand, was not based on speculation, Jeffboat contends.

But the ALJ decided to credit Dr. Gupta's opinion as more persuasive because of discrepancies in Dr. Frazier's opinion. Dr. Frazier admitted that exposure to certain types of chemicals and paint fumes could contribute to lung disease. It was thus undisputed that Chaffers was exposed to harmful lung irritants and that those irritants could contribute to lung disease. Dr. Gupta took the next logical step and concluded, based on his expertise, that Chaffers' workplace exposure to the irritants contributed to his injury. In contrast, Dr. Frazier never explained why, if exposure to lung irritants like those faced by Chaffers *could* contribute to lung disease, they did not have such an effect in this case. Faced with this gap in Dr. Frazier's reasoning, it was not unreasonable for the ALJ to rely on Dr. Gupta's opinion over Dr. Frazier's.

Jeffboat also disputes causation on the grounds that Chaffers' smoking history and pre-existing health conditions are the likely culprits of his current symptoms. But even a claimant with a pre-existing condition may be eligible to receive benefits "if a workplace incident aggravates that condition." *Sea-Land Servs., Inc. v. Dir., OWCP*, 949 F.3d 921, 924 (5th Cir. 2020) (citation omitted). "[T]he aggravation rule does not require that a later injury fundamentally alter a prior condition. It is enough that it produces or contributes to a worsening of symptoms." *See Marinette Marine*, 431 F.3d at 1034 (citations

omitted). So whether Chaffers' health conditions were pre-existing is immaterial when Dr. Gupta opined that the exposure to irritants contributed to Chaffers' lung injury. We see nothing wrong with the ALJ crediting Dr. Gupta's conclusion, especially when Dr. Frazier was silent on whether the exposure contributed to Chaffers' symptoms.

Finally, Jeffboat argues that the ALJ's finding that Chaffers was "disabled" under the Act was not supported by substantial evidence because no physician ever stated Chaffers was unable to work due to his lung condition. But Chaffers did not need to demonstrate that he was unable to return to work because of his lung impairment to be covered by the Act. The Act "provides coverage for . . . permanent partial disability." *Bunge*, 227 F.3d at 939 (citing 33 U.S.C. § 908(a)–(d)). Because there was no evidence that his injury prevented him from returning to work, the ALJ correctly classified Chaffers' disability as "partial in nature." *See id.* at 939–40 (an employee is considered "totally disabled" when he is unable to find any "suitable alternative employment"). Following 33 U.S.C. § 908(c)(23), the ALJ then determined the extent of that partial disability by crediting Dr. Gupta's impairment rating of 14% based on the AMA *Guides*. The ALJ also relied on substantial evidence in classifying the disability as permanent (i.e., "of lasting or indefinite duration") rather than temporary—the records showed Chaffers' symptoms had been ongoing for years. *See Bunge*, 227 F.3d at 940.

Because the ALJ's findings of fact and conclusions of law were rational, supported by substantial evidence, and in accordance with applicable law, we affirm the benefits decision. *See Consolidation Coal Co.*, 129 F.4th at 416.

**B**

As to Jeffboat's challenge to the District Director's fee award, it is waived. Jeffboat argues that the District Director abused his discretion by using unreasonably high hourly rates and failing to discount costs and time entries for various reasons. But Jeffboat waived this challenge by failing to provide the relevant record materials and develop an argument with legal citations. Even after an order to submit "all items cited or relied on" in its briefs, Jeffboat did not supplement the record with the underlying fee petition materials (including the actual time entries in dispute). It is thus impossible to review Jeffboat's arguments.

Jeffboat also failed to cite any case law in support of its arguments as required by Federal Rule of Appellate Procedure 28(a)(8)(A). As we have explained, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (quotation omitted). We therefore address Jeffboat's challenge to the District Director's grant of attorneys' fees and costs no further apart from one final observation about this half-baked argument: The Director already utilized his discretion in discounting the fees and costs sought by Chaffers by over one-third.

\*       \*       \*

Accordingly, we DENY the petition for review and AFFIRM the decision of the Benefits Review Board.